Filed 4/20/22  P. v. Valadez CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>FRANCISCO HERRERA VALADEZ,<br><br>     Defendant and Appellant. | F080618<br><br>(Tulare Super. Ct.<br>No. VCF032321B)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Gary L. Paden, Judge.

Law Office of Joshua Longoria and Joshua Anthony Longoria for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Nirav K. Desai and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant Francisco Herrera Valadez (appellant) pleaded no contest to robbery in 1992 (Pen. Code, § 211)[1] and was placed on probation. In 1998, the superior court granted appellant's motion to expunge/dismiss his conviction because he successfully completed probation.

In 2019, appellant, identifying himself for the first time as "Raymundo Rodriguez aka Francisco Herrera Valadez," filed a motion to vacate his robbery plea pursuant to section 1473.7. Appellant asserted that when he entered his plea in 1992, he was not aware that his conviction for robbery would result in harsh immigration consequences, and his plea should be vacated because of his prejudicial error. The superior court held a hearing and denied the motion to vacate. Appellant immediately filed a motion for the superior court to reconsider its ruling based on alleged factual and legal errors, and new evidence in appellant's file from the public defender's office. The court held an evidentiary hearing, heard testimony from the attorney who represented appellant at the plea hearing, reviewed the public defender's file, and again denied his motion to vacate. Thereafter, appellant filed his notice of appeal.

On appeal, appellant asserts the court should have granted his section 1473.7 motion to vacate because he satisfied the burden of proving his own prejudicial error about the mandatory immigration consequences of his plea, as required by the statute.

The People assert this appeal must be dismissed because appellant's notice of appeal was untimely, since he filed it more than 60 days after the court initially denied his section 1473.7 motion, and the court's subsequent evidentiary hearing did not extend the time to file the notice of appeal. The People further assert the court properly denied appellant's motion because he did not plead to an "aggravated felony" and his section 1473.7 motion was untimely. As to the merits, the People argue appellant's declaration

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

lacked credibility, and he failed to meet his burden of proving prejudicial error to support his section 1473.7 motion to vacate his plea.

While we agree with appellant that this appeal should not be dismissed and his section 1473.7 motion was not untimely, we affirm the superior court's order denying his motion to vacate his robbery plea. As we will explain below, we cannot ignore the numerous inconsistencies in appellant's motion and declaration when compared to the entire record. As a result, we are compelled to find, based on our independent review, appellant's assertions of prejudicial error in his supporting declaration are not corroborated, but instead are undermined and refuted by the record of his conviction. Moreover, the record reveals that appellant advised the public defender that his primary concern was not the possible immigration consequences, but obtaining a plea agreement that carried a "local lid," which was exactly the result of the plea agreement in this case. For these reasons, we affirm the trial court's order that denied appellant's section 1473.7 petition.

## FACTS[2]

Around 2:00 a.m. on July 26, 1992, two clerks were working at the 7-Eleven store on Lovers Lane in Visalia when three males entered the store: appellant, Ruben Juarez, and a juvenile. Juarez snapped his fingers at the clerk who was working in the back of the store and told him to come to the front. Appellant had a bandana over his mouth and chin, stood next to Juarez, and did not say or do anything.

The juvenile suspect stood in front of the counter, pulled a gun on the clerk who was standing at the register, and demanded money. The counter clerk left the cash register open and ran to another part of the store to hide. The juvenile gunman grabbed

---

[2] The facts of the charged offense are from the preliminary hearing transcript, which appellant filed in support of his section 1473.7 motion.

3.

cash from the open register and ran out of the store. Appellant and Juarez also ran out, and the three suspects got into a brown car and the vehicle left the scene.

At 2:10 a.m., a police officer responded to a dispatch about a reckless driver who was driving at excessive speeds and against traffic. The officer caught up with the vehicle, believed it matched the description of the car used by the suspects from the convenience store robbery, and attempted to conduct a traffic stop. The vehicle initially failed to stop but finally pulled over. Additional officers responded and took the vehicle's occupants into custody. Juarez was driving, appellant was sitting in the backseat, and the juvenile was also in the car. The cash stolen from the store was found under the driver's seat. The three suspects and the car were searched; the gun was not found.[3]

**PROCEDURAL BACKGROUND**

**The Charges**

On July 28, 1992, a felony complaint was filed in the Superior Court of Tulare County charging appellant with robbery and a firearm enhancement. The court appointed the public defender's office to represent appellant, and that office represented him during the plea and sentencing hearings in 1992, the probation violation hearings in 1995 through 1998, and the motion to dismiss/expunge his conviction in 1998.

On August 7, 1992, a joint preliminary hearing was held for appellant and codefendant Juarez, and they were held to answer.

---

[3] At the preliminary hearing, the court stated the third suspect was a juvenile and his case was transferred to juvenile court.

Appellant filed the probation report, prepared for his sentencing hearing in 1992, as an exhibit in support of his section 1473.7 motion, and both parties cited the contents in arguing the merits of appellant's motion. The probation report summarized the police reports and stated the male suspect who held the gun on the clerk was a juvenile, and he threw the gun out of the car window before they were stopped by the police.

On August 21, 1992, the information was filed that charged appellant and Juarez with count 1, robbery (§ 211), with the special allegation as to both parties that a principal was armed with a firearm, a handgun, during the commission or attempted commission of the offense (§ 12022, subd. (a)).

On August 24, 1992, appellant appeared for the arraignment and pleaded not guilty. On August 26, 1992, the court denied appellant's motion for bail reduction or release on his own recognizance.

**Plea Proceedings**

On October 6, 1992, Judge Moran convened the pretrial hearing for both appellant and Juarez. Appellant was assisted by an interpreter and represented by Deputy Public Defender Michael Sheltzer, who was making his first appearance for appellant.[4]

Mr. Sheltzer advised the court that appellant was going to plead no contest to the charged offense of robbery and admit the enhancement. Juarez's attorney stated he was also going to plead no contest.

The court stated it had already indicated that it would place appellant and Juarez on probation since they did not have criminal records, they were 19 years old, and the third suspect used the gun. The court explained if they violated probation, they could be sentenced to six years in prison. Both appellant and Juarez said they understood. The parties stipulated there was a factual basis for the pleas.

The following exchange ensued:

"THE COURT: … Are either one of you not American citizens or U.S. citizens?

"[APPELLANT]: I'm not, no.

---

[4] In 2013, Michael Sheltzer was appointed to the Tulare County Superior Court. To avoid confusion, we will refer to him as "Mr. Sheltzer" when discussing his representation of appellant between 1992 and 1998, and "Judge Sheltzer" when he testified at the evidentiary hearing held in 2019 on appellant's section 1473.7 motion to vacate his conviction; no disrespect is intended.

"DEFENDANT JUAREZ:  No.

"THE COURT:              Your conviction in this matter *could result* in your being excluded from this country or your application for citizenship or visa being denied.  Do you understand that?

"[APPELLANT]:            Yes.

"DEFENDANT JUAREZ: Yes."  (Italics added.)

The court advised appellant and Juarez of their constitutional rights, and they said they understood and waived those rights.  Thereafter, they each pleaded no contest to count 1, robbery, and admitted the firearm enhancement.  The court set the matter for the sentencing hearing.

The minute order for the plea hearing has a checkmark by preprinted language that appellant was advised of and understood the consequences of his plea, including "possible deportation if not a citizen of the United States."  The record does not contain a printed change-of-plea form signed by appellant and his attorney.[5]

**Probation Report**

On October 29, 1992, the probation report was filed with the court.  It stated appellant was born in Mexico in 1972, he was 20 years old, he was single, and he did not have a prior criminal record.

---

[5] Section 1016.5 "requires that before accepting a plea of guilty or nolo contendere to any criminal offense, the trial court must advise the defendant that if he or she is not a United States citizen, conviction of the offense *may result* in deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (*People v. Martinez* (2013) 57 Cal.4th 555, 558, italics added, fn. omitted.)  Section 1016.5 only requires the court to advise of possible and not mandatory immigration consequences.

The California Supreme Court recently held that in determining the merits of a section 1473.7 motion to vacate, a section 1016.5 advisement may be insufficient to mitigate the prejudice from the defendant's erroneous beliefs about the impact of his plea on mandatory immigration consequences, since the statutory advisement states that deportation is a *possibility.*  (*People v. Vivar* (2021) 11 Cal.5th 510, 533 (*Vivar*).)

Appellant told the probation officer that he was born in Guadalajara, Mexico, and his parents and other family members lived in Mexico. Appellant said he had been living with his brother in Woodlake (Tulare County) for two years, and he previously lived in Santa Barbara for three years. Appellant worked for a roofing firm in Fresno and previously worked as a farm laborer. The probation report stated that appellant "has no immigration documentation."

**Sentencing**

On November 3, 1992, the court held the sentencing hearing for both appellant and Juarez. Appellant was present and represented by Deputy Public Defender Patricia Stanley.

The court placed appellant on probation for three years subject to certain terms and conditions, including serving 365 days in jail with credit for time served, and suspended the jail term and payment of certain fines and fees. Juarez was also placed on probation subject to the same terms and conditions.

The court stated that appellant and Juarez were fortunate not to receive a state prison term because they committed a very serious offense. "This is an armed robbery, and they are getting great consideration here by probation being granted." The court stated it placed appellant and Juarez on probation "by reason of the age of these two individuals. They are both 20, and they have no prior record. They should understand though that ordinarily on a case like this, an armed robbery, anybody involved in either the actual use of a weapon or an aider or an abettor goes to state prison. And this is an extremely unusual disposition in this case."

**Probation Violations**

On October 12, 1995, the court issued a bench warrant for appellant's arrest because he violated probation by failing to report his current address to the probation officer and failing to pay the fines and fees as ordered.

7.

On October 27, 1995, appellant appeared with a deputy public defender for arraignment. Appellant denied the probation violation allegations and was released on his own recognizance.

On November 7, 1995, appellant appeared for a hearing on the probation violations with another deputy public defender. Appellant waived an evidentiary hearing and admitted the probation violations. The court reinstated appellant on probation on the same terms and conditions, extended the period for two years to 1997, and ordered him to serve 60 days in jail. The court set a hearing on the fines and fees.

On January 8, 1996, the court held a hearing on the fines and fees. Appellant was represented by Mr. Sheltzer of the public defender's office. The court ordered appellant to serve an additional 10 days in jail in lieu of the balance due for the fines and fees.

On October 31, 1997, the court revoked probation and issued a bench warrant for appellant's arrest based on allegations he violated probation by failing to pay certain fines.

On September 11, 1998, the court held a hearing on the probation violation. Appellant was present and represented by another deputy public defender. The court found appellant presented evidence of payment in full of the fines and fees, recalled the warrant, and found his probation was successfully terminated.

### MOTION TO SET ASIDE/EXPUNGE CONVICTION

On September 15, 1998, appellant filed a motion to set aside and expunge his felony robbery conviction pursuant to section 1203.4, subdivision (a), based on his successful completion of probation. This motion was filed and signed by Mr. Sheltzer, the same deputy public defender who represented him at the plea hearing.

**Appellant's Declaration**

Appellant submitted a sworn declaration in support of the motion and stated his probation violations occurred when he was unemployed and unable to make the required payments of fines and fees. Appellant declared that in 1996, he was unable to find a job

and moved to Santa Barbara County with the probation department's permission. He enrolled in school, obtained his accreditation as a Certified Nursing Assistant (CNA) in 1997, and applied for a license. In 1998, he received a notice from the Department of Health Services that his CNA license was being revoked because of his prior felony conviction.

Appellant declared he contacted the public defender's office and the superior court and learned there was an outstanding warrant for his arrest based on his failure to pay the fines imposed as conditions of his probation. Appellant thought his probation was over because he had not heard from the probation department since 1997. Appellant declared that in September 1998, he paid the balance of his fines, and the court terminated his probation.

**The Court's Order**

On September 30, 1998, the probation officer advised the court that appellant had not committed any new offenses and there was no objection to granting his pending motion to dismiss/expunge. On October 1, 1998, the court granted appellant's motion to expunge and set aside his robbery conviction.[6]

**ENACTMENT OF SECTION 1473.7**

In 2016, section 1473.7 was enacted, it became effective in 2017, and provided that a person no longer imprisoned or restrained may file a motion to vacate a conviction for the following reason: "The conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of

---

[6] A dismissal and expungement for rehabilitation purposes granted pursuant to section 1203.4 has no effect on the federal immigration consequences of a conviction that subjects a person to mandatory removal. (*Vivar, supra,* 11 Cal.5th at p. 522; *People v. Martinez, supra,* 57 Cal.4th at p. 560.)

a plea of guilty or nolo contendere." (Former § 1473.7, subd. (a)(1); Stats. 2016, ch. 739, § 1, eff. Jan. 1, 2017.)[7]

All section 1473.7 motions are entitled to a hearing. In ruling on the motion, the court shall specify the basis for its conclusion. It "shall grant the motion … if the moving party establishes, by a preponderance of the evidence, the existence of any grounds for relief specified in subdivision (a)." (Former § 1473.7, subds. (d), (e).) Section 1473.7 applies retroactively and allows challenge to pleas and final convictions that occurred before the statute was effective. (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 309–310.)

As relevant to the grounds stated in subdivision (a)(1) of section 1473.7, "California courts uniformly assumed … that moving parties who claim prejudicial error was caused by having received erroneous or inadequate information from counsel, must demonstrate *that counsel's performance fell below an objective standard of reasonableness under prevailing norms, as well as a reasonable probability of a different outcome if counsel had rendered effective assistance*. Those courts either expressly or impliedly followed the guidelines enunciated" in *Strickland v. Washington* (1984) 466 U.S. 668. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1005, italics added (*Camacho*).)

In other words, the moving party in a motion to vacate brought under the 2017 version of section 1473.7, subdivision (a) was required to prove a claim of ineffective assistance of counsel. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 861 (*Mejia*).)

**2019 Amendments to Section 1473.7**

In 2018, the Legislature amended section 1473.7, and the amendments were effective January 1, 2019. (*Mejia, supra,* 36 Cal.App.5th at p. 869.) "The California

---

[7] The second statutory basis for a motion to vacate, contained in both the 2017 and 2019 versions of the statute, is not raised in this case – that there was "[n]ewly discovered evidence of actual innocence…." (§ 1473.7, subd. (a)(2).)

Legislature knew defendants … had been misadvised on immigration consequences, yet they were losing section 1473.7 motions to vacate convictions in 2017 and 2018.  The Legislature passed Assembly Bill No. 2867 … to 'provide clarification to the courts regarding Section 1473.7' to 'ensure uniformity throughout the state and efficiency in the statute's implementation.'  [Citation.]  It intended to change the law to give defendants a *new right* to prevail using an easier new standard to retroactively challenge invalid prior convictions."  (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1067 (*Ruiz*).)

The amendments clarified that subdivision (a)(1) of section 1473.7 no longer required the moving party to prove ineffective assistance:

> "The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.  *A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel.*"  (§ 1473.7, subd. (a)(1), italics added.)[8]

The 2019 legislation again stated that the court shall grant the motion if the moving party establishes, by a preponderance of the evidence, the existence of any ground for relief specified in subdivision (a).  (§ 1473.7, subd. (e)(1).)  It further clarified that when the motion is based on subdivision (a)(1), the moving party must establish the conviction being challenged "is currently causing or has the potential to cause" the

---

[8] The 2019 amendments restate the second basis for a motion to vacate, based on newly discovered evidence of actual innocence.  (§ 1473.7, subd. (a)(2).)  Section 1473.7, subdivision (a) was again amended, effective January 1, 2021, to include a third statutory basis for a motion to vacate that is not at issue in this case – that a conviction or sentence was "sought, obtained, or imposed on the basis of race, ethnicity, or national origin …."  (*Id.*, subds. (a)–(e); Stats. 2020, ch. 317, § 5.)  Another amendment to subdivision (a)(1) went into effect on January 1, 2022, that the moving party may allege prejudicial error damaging his or her ability to "meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences *of a conviction or sentence*…."  (Stats. 2021, ch. 420, § 1, italics added.)

11.

movant's removal or denial of an application for immigration benefits, lawful status, or naturalization. (§ 1473, subd. (e)(1).)

The Legislature also clarified what the court was required to find for a motion brought under subdivision (a)(1):

> "When ruling on a motion under paragraph (1) of subdivision (a), the only finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere…." (§ 1473.7, subd. (e)(4).)

The 2019 legislation thus "eliminated the *Strickland* requirements. [Citation.] Now the trial court may set aside a conviction based on counsel's immigration advisement errors without a ' "finding of ineffective assistance of counsel." ' " (*Ruiz, supra,* 49 Cal.App.5th at p. 1067; *Vivar, supra,* 11 Cal.5th at p. 525.)[9]

### APPELLANT'S SECTION 1473.7 MOTION TO VACATE

The instant appeal is based on appellant's motion, filed on June 14, 2019, to vacate his robbery conviction pursuant to sections 1473.7. Appellant argued that prior to entering his plea, he was never advised that a robbery conviction was an aggravated felony that would result in his mandatory deportation and exclusion from the United States. Appellant's motion was filed by retained counsel Joshua Longoria, who was representing appellant for the first time, and the motion was based on the 2019 version of section 1473.7.

**Appellant's Identity**

As set forth above, all documents filed in the criminal proceedings identified appellant as "Francisco Herrera Valadez" without listing any aliases – the complaint and

---

[9] Appellant filed his section 1473.7 motion after the 2019 version of the statute become effective. We will address the applicable standards to review the merits of appellant's motion in issues III and IV, *post*.

information, the minute orders and reporter's transcripts for the preliminary hearing, arraignment, plea hearing, probation report, and sentencing hearing in 1992; the bench warrants for violating probation and subsequent hearings in 1995 and 1997; and appellant's section 1203.4 motion to dismiss/expunge and the order granting that motion in 1998.

Appellant's section 1473.7 motion, filed in 2019, identified him for the first time as "Raymundo Rodriguez, aka Francisco Valadez," without an explanation about why this name was being used. Thereafter, all pleadings filed in his section 1473.7 case identified appellant in this manner.

**Appellant's Declaration**

Appellant submitted and signed a sworn declaration in support of his section 1473.7 motion, and identified himself as "Raymundo Rodriguez, aka Francisco Herrera Valadez," again without any explanation as to why he was using an alias in the proceedings leading to his robbery conviction.

Appellant declared that he was a citizen of Mexico, he had been in the United States since 1992, and he was "attempting" to become a "Legal Permanent Resident."[10]

Appellant declared that when he was charged with robbery, he was represented by the public defender, he did not have a "good understanding" of the English language, and a Spanish interpreter assisted in his communications with his attorney and the court.[11] Appellant stated he never talked to his public defender about how his immigration status would be affected by his plea, and his public defender never told him that his robbery conviction would prevent him from receiving residency in the United States. Appellant

---

[10] In the probation report, prepared in 1992 and filed by appellant in support of his section 1473.7 motion, appellant stated he had lived in Tulare County for two years, and prior to that, he lived in Santa Barbara for three years.

[11] The record shows that interpreters were present at appellant's arraignment, the hearing on the motion to reduce bail, the plea hearing, and the sentencing hearing in 1992; and the probation violation hearings in 1995 and 1996.

claimed he was told that "the conviction would be a felony but that I was not going to be put in jail for additional time."

Appellant declared: "At the time of the plea *I do not remember* that the judge advising me [said] that this would have immigration consequences." (Italics added.) He further stated: "If I would have known the severe immigration consequences that came with the plea I would have fought my case in trial or bargained for a plea that would not bar me from applying for my legal permanent residence. I would have done everything I could to protect my immigration rights."

Appellant next addressed his motion to dismiss/expunge his robbery conviction:

> "About twenty seven years later, on February [*sic*], I filed a petition to have my conviction dismissed. The judge decided to grant my petition to set aside the conviction. I later found out that the specific way I requested the petition was not going to help me for immigration purposes. I did not have an attorney for that request."[12]

Appellant explained why he filed the instant section 1473.7 motion for relief:

> "I recently learned from [Mr. Longoria] that I might be able to vacate the conviction under a recently passed California law. Mr. Longoria also told me that if I did not get the conviction vacated that I would be barred from applying for my residency. I immediately let him know that I wanted this motion filed. I believe that I have acted promptly, without undue delay in seeking the vacate the conviction."

**Mr. Longoria's Declaration**

Mr. Longoria, appellant's current attorney, also filed a declaration in support of appellant's section 1473.7 motion. Mr. Longoria declared he was retained by "Raymundo Rodriguez" to file the instant section 1473.7 motion to vacate. Mr. Longoria

---

[12] The record shows that appellant's section 1203.4 motion to dismiss/expunge his robbery conviction was signed and filed by Mr. Sheltzer, the same public defender who represented him at the plea hearing. The motion was filed in 1998, six years after his plea. Appellant was represented by a different public defender at the hearing where the court granted his section 1203.4 motion.

14.

did not explain why this motion was filed under a different name or why "Francisco Valadez" was now an alias.

Mr. Longoria declared that he advised appellant there was a possibility to vacate his conviction based on section 1473.7, appellant retained him to do so, and he "acted promptly without undue delay to get this conviction vacated under this law."

Mr. Longoria declared appellant was represented by a public defender at his plea hearing. After probation was terminated, appellant filed a section 1203.4 for dismissal, the motion "was filed pro per [*sic*]," and the court granted the motion. Mr. Longoria declared the "immigration service" did not consider a section 1203.4 dismissal to have any effect on "their use and consideration" of convictions for immigration purposes. "Because [appellant] filed the motion to dismiss pro per [*sic*], he was never informed that the dismissal would be insufficient to protect him from any immigration consequences."[13]

Mr. Longoria declared "[t]he immigration service" considers a conviction for robbery in violation of section 211 "to be a deportable offense" that will prevent appellant "from being granted legal status in the United States." There were "immigration safe" pleas that appellant could have entered instead, such as commercial burglary, that would have been supported by the facts.

In Mr. Longoria's opinion, the failure of appellant's trial attorney to bargain for an "immigration safe" plea fell below the reasonable standard of care owed by an attorney to his client, his attorney was also required to advise about the specific immigration consequences of the plea, and the attorney's failure to do so was prejudicial because appellant would be denied legal residence.[14]

---

[13] As previously explained, a public defender filed appellant's section 1203.4 motion and represented him at the hearing when the court granted the motion.

[14] In making these arguments about counsel's duties and ineffective assistance, both appellant's motion and Mr. Longoria's declaration rely on a series of cases that are not applicable to the instant matter, and he has renewed these arguments on appeal. First,

15.

**Arguments in Appellant's Section 1473.7 Motion**

Appellant's motion stated it was being brought pursuant to the 2019 version of section 1473.7, that no longer required proof of ineffective assistance, and the motion should be granted because of appellant's prejudicial error that damaged his ability to

*Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*) held the Sixth Amendment's guarantee of effective counsel requires attorneys to advise clients if their guilty plea would make them "subject to automatic deportation," and an attorney is ineffective in failing to so advise. (*Id*. at pp. 357, 364, 368, 374.) The rule announced in *Padilla* does not apply retroactively to convictions that were final at the time *Padilla* was decided in 2010. (*Chaidez v. United States* (2013) 568 U.S. 342, 344, 357–358; *Camacho, supra,* 32 Cal.App.5th at pp. 1004–1005 & fn. 4.) As a result, *Padilla*'s ineffective assistance standard was not applicable when appellant entered his plea in 1992.

Next, appellant relies on several state cases decided prior to *Padilla*, to argue counsel was required to affirmatively advise him about the mandatory immigration consequences of his plea in 1992. These cases are also inapplicable to the circumstances of his plea. *In re Resendiz* (2001) 25 Cal.4th 230 held that "affirmative misadvice regarding immigration consequences may, depending on the circumstances of the particular case, constitute ineffective assistance of counsel" (*id*. at pp. 235, 240), but expressly declined to address "whether a mere failure to advise could also constitute ineffective assistance" or whether defense counsel was obligated to research immigration consequences but doubted the Sixth Amendment imposed "a blanket obligation on defense counsel, when advising pleading defendants, to investigate immigration consequences or research immigration law." (*Id*. at pp. 240, 249–250.) There is no evidence, and appellant has not alleged, that he received "affirmative misadvice" from his attorney before he entered his plea. (Cf. *People v. Espinoza* (2018) 27 Cal.App.5th 908, 911–918, [defendant entered plea in 2012, when *Padilla* was effective, and counsel's warning of possible immigration consequences was constitutionally inadequate since he was subject to mandatory removal].)

Appellant also cites *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1481–1482, and *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76–77, the defense attorneys in those cases were found prejudicially ineffective for giving erroneous information in response to their clients' repeated and specific questions about the impact of their pleas on their immigration status. Again, there is no evidence in this case appellant asked any of his attorneys, prior to the plea, about immigration consequences. (Cf. *People v. Barocio* (1989) 216 Cal.App.3d 99, 107–108 [trial court required to give section 1016.5 at plea hearing, but defense attorney not required to give section 1016.5 advisement to client because immigration concerns were "collateral consequence[s]" of the plea].)

meaningfully understand, knowingly accept, or defense against the immigration consequences of a crime."

The motion cited the two supporting declarations and stated that "Raymundo Rodriguez" was a citizen of Mexico and resided in the United States, he was married, his wife was a "Legal Permanent Resident," and he was applying to gain "Legal Permanent Residency."[15]

The motion stated appellant was 18 years old when he committed the offense. Appellant "is a Spanish speaking defendant and does not have a good understanding of the English language," and acknowledged a Spanish interpreter assisted in his communications with his attorney and the court at the plea hearing. Appellant was represented at the plea hearing by a public defender, Mr. Sheltzer, who allegedly negotiated the plea bargain.[16] Appellant did not recall Mr. Sheltzer telling him about any specific immigration consequences from his plea, he was unaware if Mr. Sheltzer investigated the possibility of pleading to a different charge that carried less serious immigration consequences, he did not recall signing a form that stated the immigration consequences, and he did not recall the court or Mr. Sheltzer telling him that he would be permanently barred from obtaining legal status in the United States as a result of his plea. The motion further asserted the court's advisements about immigration consequences did not conform to the language required by section 1016.5.

Appellant's motion asserted he was "in the process of obtaining legal permanent residency," but he was deportable because he was convicted of "an aggravated felony

---

[15] Appellant did not submit any evidence about his current circumstances or to support the assertion that he was married.

[16] As will be discussed below, at the subsequent evidentiary hearing on appellant's section 1473.7 motion, now-Judge Sheltzer testified he represented appellant at the plea hearing, but he did not negotiate the plea agreement. He reviewed the public defender's file for appellant's case and identified the names of the public defenders who initially interviewed appellant and likely negotiated the plea.

crime." (Italics added.) A conviction for an alternate offense of commercial burglary (§§ 459, 460, subd. (b)) would not have subjected him to mandatory deportation because it was not an aggravated felony or a crime of moral turpitude.

The motion stated that appellant, "believing he was eligible for legal status, applied for his legal residence card, left to [*sic*] Ciudad Juarez, Mexico and was denied legal residency. [¶] [Appellant] promptly retained me [Mr. Longoria] to attempt to vacate this conviction and withdraw his plea on this case."[17]

Appellant's motion stated that he filed it with reasonable diligence, the moving party was entitled to a hearing, and the moving party may be excused from appearing at the hearing "for good cause…. [Appellant] is seeking a finding of good cause not to appear at the hearing."

The motion asserted there was evidence of prejudice based on the supporting declarations "and a denial notice from the American consulate from Ciudad Juarez, Mexico stating he was denied his legal permanent residence due to the instant conviction." As a result of the plea, appellant suffered adverse immigration consequences because "as a permanent legal resident he is now subject to deportation and denial of naturalization."

The motion asserted appellant did not subjectively understand or knowingly accept the immigration consequences "of the plea to a charge of *possession of an assault weapon*, which was immediately deportability [*sic*] under federal immigration law." The motion also asserted argued that counsel's failure to negotiate a plea bargain for an offense without the same severe immigration consequences was prejudicial because an alien is deportable upon conviction of "purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or attempting or conspiring to purchase, sell, offer

---

[17] Appellant did not introduce any evidence to support these assertions in his motion about "Ciudad Juarez, Mexico." Moreover, his motion states both that he was "in the process" of applying for, and he was "denied" legal residency.

for sale, exchange, use, own, possess, or carrying, any weapon, part, or accessory *which is a firearm or destructive device.*"[18]  (Italics added.)

**The People's Opposition**

On July 11, 2019, the People filed opposition to the section 1473.7 motion, objected to the statement in appellant's motion that he would not appear for the hearing on the motion, and argued appellant had to appear since he provided a supporting declaration, and the People were entitled to question him about it.

The People argued appellant's motion was meritless because appellant failed to admit that the transcript of the plea hearing showed he received the appropriate section 1016.5 immigration admonishment at the plea hearing; that his conviction could result in deportation, denial of entry, or denial of citizenship; appellant was assisted by an interpreter at the plea hearing; and appellant said he understood.

The People further argued the allegations in appellant's declaration were refuted by the record, and appellant failed to establish either ineffective assistance or that he did not meaningfully understand the immigration consequences of his plea, as required by section 1473.7, since appellant told the court that he was not a citizen, and he understood the immigration consequences of his plea.

### FIRST HEARING ON THE SECTION 1473.7 MOTION

On July 16, 2019, Judge Paden held a hearing on appellant's section 1473.7 motion to vacate his 1992 robbery plea.  Mr. Longoria represented appellant, who was not present.  The prosecutor did not renew his objection to appellant's absence from the hearing.[19]

---

[18] Appellant was never charged with possession of an assault weapon or purchasing, selling, or possessing a firearm or destructive device.

[19] The Legislature specifically provided the hearing on a section 1473.7 motion could be conducted in the defendant's absence:  "Upon the request of the moving party, the court may hold the hearing without the personal presence of the moving party provided that it finds good cause as to why the moving party cannot be present.  If the

19.

The court questioned and dismissed counsel's assertions that the public defender who represented appellant at the plea hearing was prejudicially ineffective.

Mr. Longoria stated there was an error in his supporting declaration and asked to file a new declaration. The court replied, "You can file your declaration – the amended declaration with the Court…."[20]

The court stated that his staff retrieved the criminal records from appellant's robbery conviction, and "and there is actually a transcript of the plea. I'm not sure you were aware of that." The court stated the reporter's transcript showed that Judge Moran advised appellant about the immigration consequences before he pleaded no contest, and appellant said he understood those consequences.

Mr. Longoria argued that appellant's attorney could have negotiated another plea that would have been "immigration safe," such as commercial burglary. Mr. Longoria acknowledged that a firearm enhancement was alleged against appellant, but the evidence showed the third suspect possessed the weapon, not appellant. Mr. Longoria also acknowledged there was "some record" that the court discussed immigration consequences at the plea hearing, but "there's a lot of case law establishing that it is not the possible immigration consequences. The defense attorney has a duty to inform the client of the actual consequences with that specific plea for that defendant, and that conversation never took place."[21]

_____

prosecution has no objection to the motion, the court may grant the motion to vacate the conviction or sentence without a hearing." (§ 1473.7, subd. (d).) While appellant's motion stated he could show good cause for his absence, he never made such averments, and the People never renewed its objection at the hearings on his motion.

[20] Mr. Longoria later moved for reconsideration based on the court's alleged failure to accept his updated declaration. While the court held another hearing on the motion, Mr. Longoria did not file another declaration.

[21] As previously noted, *Padilla*'s ineffective assistance standard, requiring a defense attorney to affirmatively research and advise a client about the actual immigration consequences of a plea, is not retroactive to convictions that occurred prior to 2010 and was not applicable to appellant's attorney at the 1992 plea hearing.

The prosecutor replied that even if defense counsel had tried to negotiate for a different plea, "no such offer would have been extended by the People" because appellant was charged with committing a robbery and his accomplice had a weapon.[22]

**The Court's Denial of the Motion**

After hearing argument, the court denied appellant's section 1473.7 motion to vacate, found he was properly advised of the immigration consequences at the plea hearing, and rejected his ineffective assistance claims.

> "[A]nother significant ground in the Court's mind is the undue delay of 27 years in bringing this motion before the Court. If I were [to] allow the defendant to withdraw his plea, that, to me, is severe prejudice to the People. How would they ever be able to try this case? Witnesses are gone, dead. So the fact that he waited 27 years to do this, in my opinion, forfeits his ground to even bring this motion because he filed six years after his conviction, a [section] 1203.4. That petition was filed in 1998, and was granted in October 1998. He should have filed this petition then. Then it would be realistic to have the Court set the plea aside for some reason, which I don't find any valid reason for doing so. The [P]eople could have still tried to put the case together and present a case. But the delay in 27 years makes this impossible. [¶] I find severe prejudice to the People. The motion is denied."[23]

### APPELLANT'S MOTION FOR RECONSIDERATION

On July 25, 2019, appellant, again represented by Mr. Longoria, filed a "Penal Code Section 1008 Motion For Reconsideration" of the trial court's denial of his section

---

[22] The prosecutor also cited *People v. Chen* (2019) 36 Cal.App.5th 1052, filed just before the hearing in this case. *Chen* held the court's section 1016.5 advisement of the possibility of deportation at the time of the plea was sufficient to deny a section 1473.7 motion, and defendant's section 1473.7 motion was properly denied because counsel informed defendant that her plea would have the potential to cause her removal. (*Chen,* at p. 1061.) On October 9, 2019, the California Supreme Court denied review in *Chen* and ordered it depublished.

[23] As will be discuss in issue III, *post*, section 1473.7 was enacted in 2016, became effective in 2017, and appellant filed his motion in 2019. The statute does not define timeliness by comparing the passage of time between the moving party's plea and filing the motion to vacate. (See, e.g., *People v. Perez* (2021) 67 Cal.App.5th 1008, 1015–1016 (*Perez*).)

1473.7 motion to vacate his plea.[24] The motion was filed within a week of the court's hearing and denial of his motion.

Appellant's motion asserted there were several legal and factual errors as to why the court should again hear his section 1473.7 motion. First, the motion asserted that at the prior hearing, Mr. Longoria requested to file his own supplemental declaration, the court stated that it would allow it to be filed, but the court denied appellant's section 1473.7 motion without accepting counsel's supplemental declaration for filing, and the court did not allow counsel to interject or discuss the court's reasons for denying the motion. Appellant's motion asserted the court abused its discretion by denying his section 1473.7 motion without allowing counsel to file his supplemental declaration for consideration.

Second, the motion asserted the court did not allow counsel to address the prosecutor's arguments about an alternate plea, and whether appellant could have pleaded to an offense that did not result in mandatory deportation, or to a more serious offense that carried custodial time.

Third, the motion complained that the court made disparaging remarks to counsel and refused to consider his ineffective assistance arguments.

Fourth, the motion argued that the court improperly denied relief by finding appellant's motion was not brought in a timely manner. Appellant argued that section 1473.7 was not enacted until 2017 and, in contrast to a habeas petition, allows a moving party who is no longer in custody to move to vacate a conviction based on inadequate advisements about mandatory immigration consequences.

---

[24] As will be discussed in issue I, *post*, section 1008 of the Penal Code addresses demurrers, dismissals, and exoneration of bail. A motion for reconsideration is authorized in *civil* cases by section 1008 of the Code of Civil Procedure. (*People v. Castello* (1998) 65 Cal.App.4th 1242, 1250 (*Castello*).)

Finally, the motion argued reconsideration was appropriate because Mr. Longoria was still trying to obtain appellant's file from the public defender's office and a declaration from the public defender who represented appellant at the plea hearing, that would either corroborate or undermine appellant's declaration about the circumstances of his plea.

**The People's Opposition**

On August 8, 2019, the prosecution filed opposition and argued reconsideration was not appropriate because there were no changed circumstances or legal or factual errors in the court's initial denial of appellant's section 1473.7 motion. The prosecution further asserted that discovery of the public defender's file or a declaration from the plea attorney would not change the existence of the plea transcript that showed appellant said he understood the immigration consequences of his plea.

**Appellant's Supplemental Exhibits**

On August 15, 2019, Judge Paden held a hearing on appellant's motion for reconsideration. Both attorneys were present; appellant was not present. The court continued the matter to September 23, 2019.

On August 15 and 23, 2019, appellant's counsel filed supplemental exhibits in support of his motion for reconsideration, consisting of the public defender's file for appellant's case.[25]

*The Public Defender's File*

The public defender's internal notes from appellant's case file included two "client information" sheets with a list of preprinted questions and lines for responses, with the responses apparentlytranscribed by someone in the public defender's office. The first sheet was dated August 5, 1992, and showed that appellant "Francisco Valadez" was 19

---

[25] Appellant, through his attorney, waived attorney-client privilege as to the contents of the public defender's file and that office's prior representation of him.

years old, he lived in Woodlake, he was not married, he was a farm laborer, he had lived in the area for two years, and he did not have any prior convictions.

There is a log of notes entered by each public defender who met with and/or appeared with appellant after he was charged with robbery. On August 26, 1992, the court denied appellant's motion for OR release. On September 23, 1992, the public defender wrote in the notes that appellant was "int. in local lid w/ dismissal of s.a.," presumably referring to the special allegation attached to the robbery charge that a principal was armed with a firearm. On October 1, 1992, the public defender wrote about another meeting with appellant, and again wrote that he "wants a local lid w/dismissal of s.a." On October 6, 1992, appellant pleaded no contest to robbery and admitted the firearm enhancement, and he was later placed on probation on condition of serving 365 days in jail.

A second client information sheet was dated October 29, 1995, when appellant was alleged to have violated probation. The notes were again written by a public defender, and stated appellant was living in Santa Barbara, he was single, and he had family in Woodlake and Mexico. Appellant stated he was employed and wanted to pay the fines and fees to clear his record.

### Additional Supporting Exhibits

Also in support of his motion for reconsideration, appellant filed for the first time the reporter's transcripts for the preliminary hearing, his plea hearing, and the probation report filed before the sentencing hearing. Appellant requested the court consider these documents in support of his motion for reconsideration.

### Appellant's Arguments

Appellant's motion urged the court to reconsider the merits of his section 1473.7 motion to vacate and asserted the public defender's file did not contain any references about alternative plea offers, research about possible immigration consequences for the

robbery conviction, or that appellant would be pleading to an offense that would result in mandatory deportation under federal immigration law.

The motion further asserted that based on the preliminary hearing transcript, there was evidence to refute allegations that appellant was part of a conspiracy to commit robbery since he did not possess the gun, order the store clerks to do anything, or take the money. Appellant could have received a better plea deal for offenses that did not have the same harsh immigration consequences, such as commercial burglary, being an accessory after the fact, kidnapping, or false imprisonment.

The motion also argued that the plea transcript did not show that appellant's attorney gave appellant any specific advisements on the record about the mandatory immigration consequences of deportation from pleading to robbery. Appellant acknowledged the trial court read the section 1016.5 advisement at the plea hearing, but there was no evidence in the public defender's file that appellant's attorney researched the effect of the robbery conviction and a firearm enhancement on an undocumented immigrant.[26]

Appellant's motion acknowledged that his public defender at the plea hearing, Michael Sheltzer, was now a superior court judge. Mr. Longoria sent the public defender's file to Judge Sheltzer and requested to meet with him but did not receive a reply. Appellant requested an evidentiary hearing to question Judge Sheltzer about the plea proceedings.

## EVIDENTIARY HEARING

On September 23 and October 21, 2019, the court continued the hearing on appellant's motion to reconsider.

On December 9, 2019, Judge Paden held an evidentiary hearing on appellant's motion to reconsider his section 1473.7 motion. Mr. Longoria represented appellant, who

---

[26] As previously explained, *Padilla*'s standard of ineffective assistance did not apply when appellant entered his plea in 1992.

was not present.  The court stated that it had read appellant's supplemental pleadings and newly filed supporting exhibits, and Judge Sheltzer was present to testify about his representation of appellant.

**Judge Sheltzer's Hearing Testimony**

Judge Sheltzer testified he reviewed the public defender's file about appellant's case.  He did not have any specific recollection of representing appellant or his case.  Based on the notes in the file, Judge Sheltzer testified that a different public defender performed the initial intake with appellant, and another defender represented him at the preliminary hearing.[27]

> "*The first notes ... in the file with respect to an analysis of the case, itself, and the negotiation for the offer appears to be from August of 1992.  The attorney who reviewed that is Berry Robinson.*  I recognize his notes and his handwriting and his initials on that matter.  So that was the initial file review.  [¶]  *Apparently, at that time he had already negotiated the case with the district attorney and had received an offer.*  That appears to be a package offer, which included, I believe, the negotiation that was eventually arrived at."  (Italics added.)

Judge Sheltzer testified that based on the records in the public defender's file, he first appeared with appellant on October 6, 1992, for the plea hearing, and he was also present for the probation violation hearing.  "As far as I know, other than the violation of probation, I did not have any contact with [appellant] or the file than that."[28]

Judge Sheltzer testified about his normal practices about immigration issues when he was a public defender:

> "At that time in 1992, I was acutely aware of immigration issues as it relates to non-citizen defendants, and I would have advised him appropriately with respect to the immigration consequences with respect to

---

[27] The record shows appellant was represented by Deputy Public Defender Pia Stanley at the preliminary hearing and Deputy Public Defender Timothy Bazar at the felony arraignment.

[28] While not relevant to appellant's plea, Mr. Sheltzer also represented appellant when he moved to dismiss/expunge his conviction in 1998.

a resolution of this case. [¶] Well, anyway, that was my practice. That's what I would have done then."

Judge Sheltzer was asked what kind of questions or research would have been addressed in an initial interview with a noncitizen defendant. He replied, "Well, I'm not sure that I knew at the time of the plea what [appellant's] immigration status actually was." He continued:

> "I would have generally advised him of the deportation, exclusion from admission, the standard recitation that the Court gives. If there was a specific immigration issue that I was aware of at the time, one of two things would have happened. I either would have consulted with an immigration expert, and/or I would have done my own research in order to determine what immigration consequences there were. [¶] The primary issue in this case was [appellant] was facing robbery charges with an arming allegation. He got a sweetheart deal. And so the primary consideration that I had, because again, I don't know, *and there's no indication that I was aware at the time that I assisted him in entering the plea or that I was aware of his immigration status one way or the other*." (Italics added.)

The court stated that appellant received a "favorable resolution." Judge Sheltzer agreed that "almost regardless of the immigration consequences he got an incredibly good resolution of the case."

Appellant's attorney asked Judge Sheltzer to review the section of the plea transcript where appellant said he was not a citizen. The court interrupted and said the transcript showed "it was a valid plea" because the appellant was advised of the immigration consequences at that time.

> "[Appellant's attorney].     So at the time of the change of plea, were you aware that [appellant] was not a citizen of the United States?
>
> "[Judge Sheltzer].          *I would say that at the time of the colloquy of the Court and the defendants I was, yes.*
>
> "Q.     And you stated that you would consult an immigration expert if you were aware?
>
> "A.     If I was aware of an issue, I would have, yes." (Italics added.)

27.

Judge Sheltzer testified the public defender's office did not have an inhouse immigration expert at that time and did not know who he would have consulted on the subject.

"Q. If there was any discussion or any type of negotiations regarding an immigration-safe plea, would those notes typically be in the internal notes of the public defender file?

"A. I would say this: If there was … if issues had been raised from [appellant], with respect to immigration issues, because sometimes, in fact, it is a primary concern, in all likelihood it would have been noted, but not necessarily. *[A]t the stage that I received the matter for the appearance that I made on the case, it is unlikely that research would have been done by me because I was not analyzing that part of it. I was appearing for the change of plea.*

"Q. Understood.

"A. So to answer your question, I don't know. I would be speculating as to whether the notes would have reflected that. Again, if it had been an issue that had been researched, it might have been." (Italics added.)

Judge Sheltzer testified the public defender's office "regularly trained on the issue of immigration consequences, attended seminars, and consulted with the experts as necessary. What the state of the art in 1992 was, I couldn't tell you."

"Q. So given your experience with this case, just on the change-of-plea stage, you are saying that it was unlikely that there was any type of research regarding a specific immigration consequences for this defendant?

"A. It is very unlikely that I would have done any independent research if I was not aware that there were immigration issues with this particular defendant. [¶] If this particular defendant had flagged an issue, I would certainly have delayed the plea and/or, you know, do whatever research was necessary.

"Q. So there wasn't any, like, specific policy regarding inquiring into that specific information?

"A. *Typically, the interviewer who did the initial intake would flag any immigration issues. That was part of that person's responsibility.* The attorneys, typically, would, in negotiating the case, talk about that, perhaps,

with the client.  I mean, obviously it is their responsibility, not the interviewer.

"Q.    If there was that flag that came up in your discussions with the defendant, then you would have sought out …

"A.    I would have taken appropriate action.  My recollection in reviewing the file is that this was a package offer in order to settle the case.  This defendant does not appear to have been the heavy.  Apparently, he was not the armed individual."  (Italics added.)

**The Parties' Arguments**

After Judge Sheltzer's testimony, Mr. Longoria again argued that appellant was not the main perpetrator, and he could have pleaded to a more serious charge that would not have carried the same immigration consequences.

**The Court's Denial of the Motion for Reconsideration**

The court stated:  "I have a lot of these.  I normally would say why didn't you bargain for this *or this could have been done, but this is 37 years ago*."[29]  (Italics added.)  The prosecutor agreed and argued Judge Sheltzer's testimony "clearly established they followed a pattern of practice," and there were no new facts to support the motion.

The court stated the prosecutor's argument "hits the nail on the head, as far as I'm concerned," and "I went back and read everything over again.  I read the motion for reconsideration, supplemental motion, and all the exhibits.  And the bottom line is … [there is] nothing new that would cause me to change my opinion."  Mr. Longoria asked the court to state the reason for denying the motion to vacate.  The court replied:  "I feel it was a valid plea."

---

[29] As will be discuss in issue III, *post*, appellant entered his plea in 1992, section 1473.7 became effective in 2017, and appellant filed his motion 27 years after his plea, in 2019.

## DISCUSSION

I.     **Appellant's Notice of Appeal was Timely**

The People argue this appeal must be dismissed because appellant did not file a timely notice of appeal.[30]  The People assert that appellant was required to file a notice of appeal after the court denied his section 1473.7 motion on July 16, 2019.  Instead, appellant filed a motion for reconsideration and filed the notice of appeal after the court denied the reconsideration motion on December 9, 2019.  The People thus assert the notice was thus untimely since it was filed more than 60 days after July 16, 2019, and appellant's motion for reconsideration did not extend the statutory time to file the notice of appeal after the court's order.  Appellant replies that his notice was timely because the time to file it was extended when he filed his motion to reconsideration, by operation of Code of Civil Procedure section 1008, subdivision (a).

While section 1008 of the Code of Civil Procedure is not applicable to criminal cases, we will find appellant's notice of appeal was timely filed under the circumstances of this case.

A.     *Background*

On July 16, 2019, Judge Paden heard and denied appellant's section 1473.7 motion to vacate his robbery conviction, apparently without prejudice.  On the same day, a minute order was filed that stated the court denied appellant's motion to vacate.  A judgment was not filed or served on appellant or his attorney.

Appellant did not file a notice of appeal.  Instead, on July 25, 2019, nine days later, appellant filed a motion for reconsideration of the trial court's denial of his section 1473.7 motion.  The motion asserted that it was brought pursuant to "Penal Code Section 1008," that provides for "reconsideration" based on "new or different facts, circumstances or law" if made "within 10 days after service."  Appellant's motion further

---

[30] The People have not filed a separate motion to dismiss the appeal, but instead raise this contention as an argument in the respondent's brief.

asserted: "This Court denied relief on July 16, 2019. This motion is filed on July 25, 2019. Therefore, this motion is timely filed."

On August 8, 2019, the People filed opposition to the motion for reconsideration. The People did not assert the trial court lacked jurisdiction or authority to reconsider its order.

On August 15, 2019, Judge Paden held a hearing on appellant's motion for reconsideration. Both attorneys were present. The court, on its own motion, continued the matter to September 23, 2019. In August and September 2019, appellant filed additional authorities in support of his motion for reconsideration. On September 23 and October 21, 2019, the court continued the hearing on appellant's motion.

On December 9, 2019, Judge Paden held the evidentiary hearing on appellant's motion for reconsideration of his section 1473.7 motion. As set forth above, Judge Sheltzer testified, the parties argued the motion, and the court again denied appellant's section 1473.7 motion.

On January 13, 2020, appellant filed a notice of appeal with the superior court from the denial of his section 1473.7 motion. He also requested a certificate of probable cause to challenge the validity of his plea because he was not advised of the immigration consequences when he pleaded no contest to robbery in 1992, his section 1473.7 motion to vacate was denied, he filed a motion for reconsideration, the court conducted an evidentiary hearing on the motion for reconsideration, and it again denied relief. Appellant's notice of appeal was accepted for filing, and the court granted his request for a certificate for probable cause.

**B.**      *Appeals of Rulings Under Section 1437.7*

Section 1473.7, subdivision (f) states: "An order granting or denying the motion [to vacate] is appealable under subdivision (b) of Section 1237 as an order after judgment affecting the substantial rights of a party."

31.

Section 1237, subdivision (b) states that a defendant may take an appeal from "any order made after judgment, affecting the substantial rights of the party." A defendant has 60 days to file a notice of appeal from such an order, and the order becomes final if he fails to do so. (Cal. Rules of Court, rules 8.104(a), 8.308(a).)

" 'The general rule is that " ' "[t]he filing of a valid notice of appeal vests jurisdiction of the cause in the appellate court until determination of the appeal and issuance of the remittitur" [citation], thereby divesting the trial court of jurisdiction over anything affecting the judgment. [Citations.]' " [Citations.] " 'The purpose of the rule depriving the trial court of jurisdiction in a case during a pending appeal is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment … by conducting other proceedings that may affect it.' [Citation.]" [Citation.]' " (*Jackson v. Superior Court* (2010) 189 Cal.App.4th 1051, 1065, italics omitted; *People v. Superior Court (Gregory)* (2005) 129 Cal.App.4th 324, 329.)

### C. *Code of Civil Procedure Section 1008*

Appellant's motion for reconsideration was brought pursuant to "Penal Code Section 1008." That statute addresses demurrers, dismissals, and exoneration of bail.

Appellant apparently meant to rely on section 1008 of the Code of Civil Procedure, which states: "When an application for an order has been made to a judge, or to a court, and refused in whole or in part …, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order…." (Code Civ. Proc., § 1008, subd. (a).) "An order denying a motion for reconsideration made pursuant to subdivision (a) is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial

32.

of the motion for reconsideration is reviewable as part of an appeal from that order." (*Id.* at subd. (g).)

"If any party serves and files a valid motion to reconsider an appealable order under Code of Civil Procedure section 1008, subdivision (a), the time to appeal from that order is extended for all parties until the earliest of: [¶] (1) 30 days after the superior court clerk or a party serves an order denying the motion or a notice of entry of that order; [¶] (2) 90 days after the first motion to reconsider is filed; or [¶] (3) 180 days after entry of the appealable order." (Cal. Rules of Court, rule 8.108(c), italics added.)

While Code of Civil Procedure section 1008 extends the time to file an appeal, it is not applicable to motions filed in criminal cases and has been limited to civil cases. (*Castello, supra,* 65 Cal.App.4th at pp. 1248–1249; *People v. Superior Court* (*Laff*) (2001) 25 Cal.4th 703, 728–729 & fn. 12.)

**D.      *The Court's Inherent Authority to Reconsider Its Own Rulings***

*Castello* held that as a separate matter from Code of Civil Procedure section 1008, "[i]n criminal cases there are few limits on a court's power to reconsider interim rulings." (*Castello*, *supra*, 65 Cal.App.4th at p. 1246.) "Some of the court's inherent powers are set out by statute, but the inherent powers of the courts are derived from the Constitution and are not confined by or dependent on statute. [Citations.] [¶] A court's inherent powers are wide. [Citations.] *They include authority to rehear or reconsider rulings*: '[T]he power to grant rehearings is inherent, – is an essential ingredient of jurisdiction, *and ends only with the loss of jurisdiction.*' " (*Id.* at pp. 1247–1248, italics added, fn. omitted; *People v. Nesbitt* (2010) 191 Cal.App.4th 227, 239–240; *People v. DeLouize* (2004) 32 Cal.4th 1223, 1231.)

"A court could not operate successfully under the requirement of infallibility in its interim rulings. Miscarriage of justice results where a court is unable to correct its own perceived legal errors, particularly in criminal cases where life, liberty, and public protection are at stake. Such a rule would be ' "… a serious impediment to a fair and

speedy disposition of causes.…" ' " (*Castello, supra*, 65 Cal.App.4th at p. 1249; see also *Jackson v. Superior Court, supra*, 189 Cal.App.4th at pp. 1066–1068.)[31]

E. *Analysis*

Appellant's notice of appeal was timely filed after the court's final order based on the circumstances of this case. The court initially denied appellant's section 1473.7 motion on July 16, 2019, without prejudice. Appellant had 60 days to file an appeal from that order, or it would become final, and the superior court would lose jurisdiction.

On July 25, 2019, nine days later, appellant requested the court reconsider its ruling, and asserted the court allegedly committed several legal and factual errors and there was new evidence to support the motion.

On August 15, 2019, the court held a hearing on appellant's motion, well before its prior order became final and while it retained jurisdiction over the case. The court did not summarily deny the motion based on an alleged lack of jurisdiction, but instead decided to continue the matter and set a hearing for September 23, 2019. In doing so, the court's decision shows that it considered its prior ruling of July 16, 2019, to be an interim order, and it was exercising its inherent authority to rehear the matter, based on appellant's allegations that it made factual and/or legal errors when it denied his section 1473.7 motion, and there was new evidence to support the motion. (*People v. Nesbitt, supra*, 191 Cal.App.4th at p. 239–241; *Jackson v. Superior Court, supra,* 189 Cal.App.4th at p. 1065; *People v. Superior Court* (*Gregory*)*, supra*, 129 Cal.App.4th at p. 329.)

On December 9, 2019, the court held a full evidentiary hearing, the district attorney did not object to the hearing being held, and Judge Sheltzer testified about his

---

[31] The California Supreme Court cited *Castello* in holding that Code of Civil Procedure section 1008 does not separately limit a "court's authority to reconsider interim rulings on its own motion." (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1001, 1107.)

34.

prior representation of appellant. The court considered his testimony, stated it had reviewed the new evidence submitted by appellant, and again denied the section 1473.7 motion for relief and found he entered a valid plea in 1992.

An order denying a section 1473.7 motion for relief is appealable. (§ 1473.7, subd. (f).) On January 13, 2020, within 60 days of the court's final order denying his motion, appellant filed the notice of appeal after the court's final order. (Cal. Rules of Court, rules 8.104(a), 8.308(a).)

Appellant's notice of appeal from the court's final order on December 9, 2019, was timely and we deny the People's request to dismiss this appeal.

## II. Appellant's Robbery Conviction

Appellant's section 1473.7 motion asserted the court should grant relief because he did not know that by pleading no contest to robbery, he was pleading to an "aggravated felony" within the meaning of federal immigration law, and it would result in mandatory harsh immigration consequences including removal and being inadmissible.

The People argue that appellant's section 1473.7 motion for relief is meritless because when he entered his plea in 1992, a conviction for robbery would not result in his mandatory deportation or other harsh immigration consequences. The People cite the definition of an "aggravated felony" under federal immigration law in 1992, and assert a violation of section 211 was only defined as such if a five-year term of imprisonment was actually imposed, and appellant only received a term of 365 days in jail.

The People did not raise this issue in the trial court, but it involves a question of law that we will address. (See, e.g., *Moncrieffe v. Holder* (2013) 569 U.S. 184, 190–191; *Lopez-Aguilar v. Barr* (9th Cir. 2020) 948 F.3d 1143, 1146.)

### A. *Aggravated Felony*

"The Immigration and Nationality Act (INA) renders deportable any alien convicted of an 'aggravated felony' after entering the United States. [Citation.] Such an alien is also ineligible for cancellation of removal, a form of discretionary relief allowing

35.

some deportable aliens to remain in the country.  [Citation.]  Accordingly, removal is a virtual certainty for an alien found to have an aggravated felony conviction, no matter how long he has previously resided here." (*Sessions v. Dimaya* (2018) __ U.S. __ [138 S.Ct. 1204, 1210–1211]; *Torres v. Lynch* (2016) 578 U.S. 452, 454.)

"The particular statute defining an 'aggravated felony' was first enacted as part of the Anti-Drug Abuse Act of 1988 [ADAA]….  It included only the offenses of murder, drug trafficking, illicit trafficking in firearms and any conspiracy to commit those acts." (*U.S. v. Andrino-Carillo* (9th Cir. 1995) 63 F.3d 922, 925.)  Subsequent statutory amendments expanded the definition of an aggravated felony "by way of a long list of offenses," enumerated in section 1101(a)(43) of title 8 of the United States Code.  (*Torres v. Lynch, supra*, 578 U.S. at p. 455.)  In 1996, the INA was again amended to further expand the definitions of an "aggravated felony," and these definitions have been held to apply retroactively for purposes of removal, inadmissibility, and exclusion, regardless of whether the conviction was entered before, on, or after the effective date of the amendments.  (See, e.g., *I.N.S. v. St. Cyr* (2001) 533 U.S. 289, 318–322; *Ledezma-Galicia v. Holder* (9th Cir. 2010) 636 F.3d 1059, 1065; *Bell v. Reno* (2d Cir. 2000) 218 F.3d 86, 89.)

### B.  *Robbery as a Crime of Violence and Aggravated Felony*

As a result of amendments enacted in 1990, the INA expanded "the definition of aggravated felonies to include 'any crime of violence … for which the term of imprisonment imposed *is at least five years*.' "  (*U.S. v. Viramontes-Alvarado* (9th Cir. 1998) 149 F.3d 912, 918, italics added; *U.S. v. Ullyses-Salazar* (9th Cir. 1994) 28 F.3d 932, 938, overruled on other grounds in *U.S. v. Gomez-Rodriguez* (9th Cir. 1996) 96 F.3d 1262, 1265.)  Thereafter, a robbery conviction in violation of section 211 was treated as a crime of violence and an aggravated felony under the INA if the term imposed was at least five years.  (*U.S. v. Martinez-Hernandez* (9th Cir. 2019) 932 F.3d 1198, 1203

(*Martinez-Hernandez*); *U.S. v. Guzman-Ibarez* (9th Cir. 2015) 792 F.3d 1094, 1099; *Lawrence v. Holder* (9th Cir. 2013) 717 F.3d 1036, 1039.)

While robbery was defined as a crime of violence and an aggravated felony when appellant entered his plea in 1992, that definition applied only if the court actually imposed a five-year sentence on the defendant. When appellant entered his plea, he was placed on probation for three years and ordered to serve 365 in jail. Thus, his plea was not to a crime of violence within the definition of an aggravated felony in 1992.

C.       *Robbery as a Theft Offense and Aggravated Felony*

In 2011, the California Supreme Court held a robbery conviction in violation of section 211 "can be violated by the accidental use of force. [Citation.] [The Ninth Circuit] therefore subsequently held that a [section 211] conviction is not categorically a violent felony" and an aggravated felony under the INA. (*Martinez-Hernandez, supra,* 932 F.3d at p. 1203.) The Ninth Circuit held that a robbery conviction in violation of section 211 was still defined as an aggravated felony because it was a "theft offense" within the meaning of the INA. (*Id*. at pp. 1204–1206.)

In 1992, however, a theft offense such as robbery was defined as an aggravated felony only "if the term of imprisonment imposed upon the defendant *was at least five years*." (*U.S. v. Guzman-Ibarez, supra*, 792 F.3d at p. 1099, italics added.) As a result of amendments effective in 1996, theft offenses were defined as aggravated felonies "so long as the defendant was sentenced to one year or more in prison, rather than five years or more," and this new definition applied "to convictions 'before, on, or after the date of enactment.' " (*Ibid*.)

Appellant's robbery conviction was not an "aggravated felony" based on the definition of a "theft offense" at the time of his 1992 plea for the same reason it was not a "violent crime" – the court did not "impose" a term of five years for the offense.[32]

---

[32] In 1996, the INA again amended the definition of an aggravated felony to include convictions for robbery as a violent offense (*U.S. v. Guzman-Ibarez, supra,* 792

37.

**D.** *Convictions Involving Moral Turpitude*

While appellant may not have entered a plea to an offense defined as an "aggravated felony" in 1992, that does not end the analysis. An aggravated felony is only one of several grounds for deportation in the INA. (8 U.S.C. § 1227(a)(2)(A)(iii).) Another ground is committing "crimes of moral turpitude. (8 U.S.C. § 1227(a)(2)(A)(i).)

At the time of appellant's plea, as the present time, a conviction of a crime involving moral turpitude was a ground for deportation and inadmissibility. (See e.g., *Zavaleta-Gallegos v. I.N.S.* (9th Cir. 2001) 261 F.3d 951, 953.) A noncitizen convicted of a crime involving moral turpitude for which a sentence of one year or longer may be imposed is deportable and inadmissible. (*I.N.S. v. St. Cyr, supra,* 533 U.S. at pp. 293–298; 8 U.S.C. § 1182(a)(2)(A)(i).).

It has been consistently held since 1946 by the Board of Immigration Appeals (BIA) and federal circuits that robbery in violation of section 211 is a crime involving moral turpitude within the meaning of the INA, as a "logical outgrowth" of the determination that "theft offenses" are crimes involving moral turpitude. (*Mendoza v. Holder* (9th Cir. 2010) 623 F.3d 1299, 1303–1304; *Aguilar-Ramos v. Holder* (9th Cir. 2010) 594 F.3d 701, 703; *Delgadillo v. Carmichael* (1947) 332 U.S. 388, 389–390.) Thus, when appellant pleaded no contest to robbery in 1992, a violation of section 211 had long been held to constitute a crime of moral turpitude within the meaning of the INA, making him subject to deportation and being inadmissible at the time of his conviction.

---

F.3d at p. 1099; *U.S. v. Alvarado-Pineda* (9th Cir. 2014) 774 F.3d 1198, 1202) and a theft offense (*U.S. v. Alvarado-Pineda*, at p. 1202; *Lopez-Aguilar v. Barr, supra*, 948 F.3d at p. 1147) if the term of imprisonment was at least one year. While appellant may have been subject to immigration consequences as a result of the retroactive application of the current definitions, his plea to robbery did not fall within the definition of a theft offense and aggravated felony in 1992.

## III.    Section 1473.7 and Timeliness

As another preliminary matter, the People assert the court properly denied appellant's section 1473.7 motion because he did not seek relief in a timely manner since he entered his plea in 1992 and filed his motion 2019.  Appellant replies the court's timeliness findings were erroneous under the provisions of section 1473.7.  Appellant is correct.

### A.    *Reasonable Diligence*

"In adopting and amending section 1473.7, the Legislature considered the problems faced by defendants 'who were unaware of the immigration consequences posed by a plea entered many years earlier.'  [Citation.]  Although such motions 'must be timely' [citation], they 'ordinarily are brought many years after the plea.' " (*Perez*, *supra*, 67 Cal.App.5th at p. 1013.)  "Unlike the *Padilla* rule, Section 1473.7 applies retroactively, allowing challenges to pleas entered into before it was adopted." (*People v. Rodriguez, supra,* 68 Cal.App.5th at pp. 309–310.)

Section 1473.7, subdivision (b) states the reasonable diligence provisions for bringing a motion to vacate under subdivision (a)(1):

> "(b)(1) Except as provided in paragraph (2), a motion pursuant to paragraph (1) of subdivision (a) shall be deemed timely filed at any time in which the individual filing the motion *is no longer in criminal custody*.

> "(2) A motion pursuant to paragraph (1) of subdivision (a) may be deemed untimely filed if it was not filed with *reasonable diligence* after the later of the following:

> "(A) *The moving party receives a notice to appear in immigration court* or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal or the denial of an application for an immigration benefit, lawful status, or naturalization.

> "(B) Notice that *a final removal order* has been issued against the moving party, based on the existence of the conviction or sentence that the moving party seeks to vacate." (§ 1473.7, subd. (b), italics added.)

39.

Section 1473.7, subdivision (b)(1) states "a general rule requiring the court to deem the motion timely in certain circumstances." (*Perez, supra*, 67 Cal.App.5th at p. 1012.) Subdivision (b)(2) of section 1473.7 is "a discretionary exception that permits the court to deem the motion untimely if the moving party did not act with reasonable diligence in bringing the motion after specific triggering events." (*Perez*, at p. 1012.)

"Thus, the absence of reasonable diligence does not automatically result in the motion being deemed untimely. A superior court has the discretionary authority, after considering the totality of the circumstances, to deem a motion timely even if the moving party did not act with reasonable diligence." (*Perez, supra*, 67 Cal.App.5th at p. 1012.) A superior court's interpretation of the reasonable diligence standard presents a question of law. (*People v. Alatorre* (2021) 70 Cal.App.5th 747, 755.)

In *Perez*, this court held subdivision (b) of section 1473.7 "unambiguously establishes the following principles governing the timeliness of a motion to vacate a conviction based on the absence of a meaningful understanding and knowing acceptance of the immigration consequences of a plea." (*Perez, supra*, 67 Cal.App.5th at p. 1016.)

> "First, if 'the individual filing the motion is no longer in criminal custody' and the triggering events specified in subparagraphs (A) and (B) of subdivision (b)(2) of section 1473.7 have not yet occurred, the motion must be deemed timely under the mandatory rule in subdivision (b)(1) of section 1473.7. [Citation.] [¶] Second, if the triggering events have occurred, the superior court must determine whether the motion was 'filed with reasonable diligence after the later of' the triggering events. [Citation.] [¶] Third, if the superior court determines the moving party acted with reasonable diligence after the later of the triggering events, the motion must be deemed timely under the mandatory rule in subdivision (b)(1) of section 1473.7. In other words, the discretionary exception to deem the motion untimely does not apply. [¶] Fourth, if the superior court determines the moving party did not act with reasonable diligence after the later of the triggering events, the court must exercise its discretionary authority and decide whether to deem the motion untimely. To properly exercise the discretionary authority granted by subdivision (b)(2) of section 1473.7, the court must consider the totality of the circumstances." (*Ibid.*)

*Perez* "clarified that 'reasonable diligence' is not a timeliness *requirement* for section 1473.7 motions made under subdivision (a)(1), but rather a *condition* that, if present, requires the court to grant meritorious motions. Conversely, if the condition is lacking, the court is then empowered to exercise its discretion to either consider the merits or deny the motion on timeliness grounds." (*People v. Alatorre, supra,* 70 Cal.App.5th at p. 757.) In doing so, "the Legislature created a strikingly generous timeliness standard for immigration-related petitions." (*Id.* at p. 759.) "[I]t is most consistent with the meaning and purpose of section 1473.7 to evaluate reasonable diligence in cases where the petitioner's triggering events predated the law by determining whether or when the petitioner had a reason to inquire about new legal grounds for relief, and assessing the reasonableness of the petitioner's diligence from that point forward." (*Id.* at p. 765.) "[W]here a petitioner's adverse immigration consequences predate January 1, 2017, a court assessing the timeliness of a section 1473.7 motion must determine when the petitioner would have had reason to seek legal help or otherwise investigate new forms of postconviction relief, and evaluate diligence from that point forward, in light of all the circumstances." (*Id.* at p. 753.)

## B.     *Analysis*

At the first hearing on appellant's section 1473.7 motion to vacate his plea, the court denied relief based on the "significant ground" of appellant's "undue delay of 27 years in bringing this motion before the Court," found it would result in "severe prejudice" to the People if relief were granted, and "the fact that he waited 27 years to do this, in my opinion, forfeits his ground to even bring this motion because he filed six years after his conviction, a [section] 1203.4. That petition was filed in 1998 and was granted in October 1998. *He should have filed this petition then.* ... But the delay in 27 years makes this impossible." (Italics added.) At the second hearing, the court stated that appellant entered his plea "37 years ago [*sic*]," and denied relief because it found appellant's plea was valid.

41.

To the extent the trial court denied appellant's petition because of his alleged failure to timely file it, that decision was erroneous as a matter of law. First, section 1473.7 did not exist when appellant entered his plea in 1992, or when he brought his motion to dismiss/expunge in 1998. Section 1473.7 was enacted in 2016, it became effective in 2017, and appellant filed his motion in 2019. The California Supreme Court has explained that the Legislature enacted section 1473.7 so that defendants "who were unaware of the immigration consequences posed by a plea entered *many years earlier*" could subsequently move to vacate their convictions and obtain relief from imminent immigration orders. (*Vivar, supra*, 11 Cal.5th at p. 523, italics added.) Thus, the court's repeated complaints that appellant improperly waited 27 years to file this motion for relief was a legally invalid ground to deny relief.

Second, there is nothing in the instant record to show appellant's motion was not timely under the provisions of section 1473.7. As will be discussed in issue IV, *post*, there are major credibility problems raised by appellant's motion and the supporting declarations, but his motion still asserts that he filed for relief under section 1473.7 after consulting with Mr. Longoria, learning about the harsh immigration consequences resulting from his plea, and being advised about the statute's existence.

There is no evidence that any of the circumstances set forth in section 1473.7, subdivision (b) existed to show appellant did not act with reasonable diligence. Appellant's decision to file the motion in 2019, two years after section 1473.7 went into effect, was not untimely under the nature and circumstances of this case. We thus find the court improperly relied on timeliness as a reason to deny appellant's section 1473.7 motion.

## IV.    Appellant's Motion for Relief

We turn to the merits of appellant's section 1473.7 motion that was filed in 2019 and based on the amendments that were effective that year. Appellant argues his motion should have been granted because he was never advised, and did not realize, that his

robbery plea would make him deportable, and his lack of knowledge was prejudicial because he would not have entered the plea if he had known about the immigration consequences.[33]  The People reply that appellant's allegations of prejudicial error are not credible, and the superior court properly denied his petition.

### A.     *Prejudicial Error*

Section 1473.7, subdivision (a)(1) states the basis relied on by appellant to bring his motion to vacate:

> "The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.  A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."  (§ 1473.7, subds. (a)(1), (e)(4).)

"[T]o establish a 'prejudicial error' under section 1473.7, a person need only show by a preponderance of the evidence:  1) he did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and 2) had he understood the consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges."  (*Mejia, supra*, 36 Cal.App.5th at p. 862.)

"[T]he focus of the inquiry in a section 1473.7 motion is on the '*defendant's own error* in … not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.'  [Citation.]"  (*Mejia, supra*, 36 Cal.App.5th at p. 871, italics in original; *Camacho, supra*, 32 Cal.App.5th at p. 1009.)

"[S]howing *prejudicial* error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if

---

**33** Appellant also restates his ineffective assistance claims based on *Padilla,* but, as explained above, *Padilla*'s heightened standards of representation were not applicable to his 1992 plea.

the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar*, *supra*, 11 Cal.5th at pp. 529–530, italics added.) "The focus [is] on 'what the defendant would have done, not whether the defendant's decision would have led to a more favorable result….' " (*Id.* at pp. 528–529.) In making this assessment, we consider the totality of the circumstances. (*Id.* at p. 529.)

A " 'prejudicial error' occurs under of section 1473.7 when there is a *reasonable probability* that the person would not have pleaded guilty – and would have risked going to trial (even if only to figuratively through a ' "Hail Mary" ') – had the person known that the guilty plea would result in mandatory and dire immigration consequences." (*Mejia, supra*, 36 Cal.App.5th at p. 871, quoting *Lee v. United States* (2017) __ U.S. __ [137 S.Ct. 1958, 1967]; *Camacho, supra*, 32 Cal.App.5th at p. 1010.)

### B.      *Independent Review*

The moving party has the burden to prove by a preponderance of the evidence that he or she is entitled to relief on a section 1473.7 motion. (*Vivar, supra*, 11 Cal.5th at p. 517.)

In *Vivar*, the California Supreme Court adopted the independent review standard for section 1473.7 motions. (*Vivar, supra*, 11 Cal.5th at pp. 524–525.) " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that ' "[i]ndependent review is *not* the equivalent of de novo review …." ' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. [Citations.] … In section

1473.7 proceedings, appellate courts should … give particular deference to factual findings based on the trial court's personal observations of witnesses.  [Citation.]  Where, as here, the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding.  [Citation.]  Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7."  (*Id.* at pp. 527–528, fns. omitted.)

## C.　*Application of Independent Review*

*Mejia* found "contemporaneous evidence in the record to substantiate [the defendant's] claim that he would not have pleaded guilty had he known about the mandatory and dire immigration ramifications," because he had lived in the country for a substantial period of time with his family, and there were also "lingering questions" about the strength of the evidence to support the charged offenses.  (*Mejia, supra*, 36 Cal.App.5th at p. 872.)  *Mejia* also found another "contemporaneous substantiation of prejudice" because the defendant entered "a 'straight up' plea directly to the court rather than a negotiated disposition," and he was placed on probation.  It was not likely that he would have been sentenced to the maximum prison term if he had been convicted after a trial because he had no criminal record, and it was an unsophisticated crime.  (*Id.* at pp. 872–873.)

*Camacho* similarly held "[the] defendant's claims of error were supported by his former attorney's undisputed testimony … that he misunderstood the potential immigration consequences … and he did not explore possible alternatives to pleading to an aggravated felony."  (*Camacho*, *supra*, 32 Cal.App.5th at p. 1009.)

*Vivar* held that defendant provided objective evidence to corroborate his assertions that he would not have entered his plea.  "Time and again, the record readily conveys

how [the defendant] would have considered his immigration status 'the most important part' of his decision to plead," based on the lengthy of his personal, educational, marital, and employment ties with the United States, which "constitute contemporaneous objective facts that corroborate [his] concern about the immigration consequences of his plea options." (*Vivar, supra*, 11 Cal.5th at p. 530.) *Vivar* also cited undisputed evidence of letters that the defendant sent to the court at or near the time of his plea, expressing his concern about the impact of a conviction on his status as a legal resident. (*Id*. at p. 531.) In addition, the defendant presented counsel's e-mail correspondence and handwritten notes to establish that counsel did not "advise him as to the actual immigration consequences of a plea to the drug charge or any other plea." (*Id*. at p. 519.)

**D.     *Analysis***

As we have already explained, appellant's section 1473.7 motion was not untimely, and his plea was to an offense defined as "a conviction involving moral turpitude" under federal immigration law in 1992. We also note that at the plea hearing, the court advised appellant that his conviction "could" result in immigration consequences. While this warning about possible consequences may have complied with section 1016.5, it was insufficient to advise appellant that his plea would subject him to mandatory immigration consequences. (*Vivar, supra*, 11 Cal.5th at p. 533.)

In appellant's declaration filed in support of his section 1473.7 motion, he stated that prior to entering his plea, he never talked to his public defender about how his immigration status would be affected by his plea, his public defender never told him that his robbery conviction would prevent him from receiving residency in the United States, he did not remember the judge advising him about immigration consequences, and if he had known about the "severe immigration consequences," he would have gone to trial or bargained for a plea to another offense. Appellant's motion relied on this statement to argue that he established prejudicial error to satisfy his burden of proof to obtain relief under section 1473.7.

"[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with ' "objective evidence." ' " (*Vivar, supra*, 11 Cal.5th at p. 530.) "In a postconviction setting, courts should not simply accept a defendant's statement of regret regarding the plea, courts should also 'look to contemporaneous evidence to substantiate a defendant's expressed preferences.' " (*Mejia, supra,* 36 Cal.App.5th at pp. 871–872.)

Based on this court's independent review, we find appellant did not meet his burden to establish he was entitled to relief under section 1473.7. We cannot ignore the inherently inconsistent and factually invalid assertions contained throughout the instant record that fail to corroborate and, in fact, undermine appellant's claims of prejudicial error in his declaration in support of his section 1473.7 motion.

First and foremost, appellant failed to explain why he was seeking section 1473.7 relief under a different name than he used when he was convicted. In all the charging documents and court orders arising out of his arrest in 1992, appellant was identified as "Francisco Herrera Valadez," without any aliases – in the criminal complaint, information, probation report, and plea and sentencing transcripts in 1992, continuing with the probation violations from 1995 to 1997, and through the court's order granting his motion to dismiss/expunge in 1998.

In 2019, "Raymundo Rodriguez, aka Francisco Valadez" filed this section 1473.73 motion to vacate his robbery plea, without any explanation for the name change, and whether and why he previously used an alias in court proceedings from 1992 to 1998. Appellant continued to identify himself as "Raymundo Rodriguez, aka Francisco Valadez" throughout all the proceedings on his section 1473.7 motion in 2019.[34] Appellant's apparent use of an alias when he was arrested, charged, and convicted in

---

[34] Appellant's briefing on appeal is captioned "Francisco Herrera Valadez," again without an explanation.

47.

1992, and his subsequent identification under another name without explanation, seriously undermines the credibility of statements in his supporting declaration and his section 1473.7 motion.

There are additional inconsistencies in appellant's declaration and motion, compared to the record. Appellant also stated in his supporting declaration that he had lived in the United States since 1992, which was the same year he was arrested, charged, entered his plea, and sentenced for robbery. In the probation report, prepared in 1992 after he entered his plea, appellant told the probation officer that he had lived in Tulare County for two years and, prior to that, he lived in Santa Barbara for three years, thus asserting he had lived in the United States for five years. Appellant submitted the probation report in support of his section 1473.7 motion, but he did not explain the discrepancy about how long he had been in the United States when he was convicted in this case.

Appellant also declared that he did not have a "good understanding" of the English language, and his motion cited this reason in support of his claim of prejudicial error because he did not understand the immigration consequences when he entered his plea in 1992. In that same declaration, however, appellant acknowledged that a Spanish interpreter assisted in his communications with his attorney and the court. The record further undermines his assertions about alleged language problems because interpreters were present at appellant's arraignment, the hearing on the motion to reduce bail, the plea hearing, and the sentencing hearing.

Appellant also stated in his supporting declaration that when he filed his section 1203.4 motion to dismiss/expunge his robbery conviction in 1998, he "did not have an attorney for that request." Appellant's current attorney filed his own declaration in support of appellant's section 1473.7 motion, and similarly stated appellant filed his motion to dismiss/expunge in pro. per., without the assistance of an attorney. More importantly, counsel declared appellant's lack of an attorney in 1998 constituted further

evidence of prejudicial error because the "immigration service" did not consider a section 1203.4 dismissal to have any effect on "their use and consideration" of convictions for immigration purposes, and since appellant "filed the motion to dismiss pro per [*sic*], he was never informed that the dismissal would be insufficient to protect him from any immigration consequences." The record refutes these declarations because appellant's motion to dismiss/expunge was signed and filed by Mr. Sheltzer of the public defender's office in 1998, and another public defender appeared with appellant at the hearing where the court granted the motion.

Appellant's motion asserted he was entitled to relief based on his contacts with this country because he was married. The probation report from his 1992 sentencing hearing stated appellant was single. Appellant did not submit any declarations or introduce evidence to support this assertion about his marital status. He filed a declaration in support of his motion to dismiss/expunge in 1998 and stated that he had been licensed as a CNA. In contrast to *Vivar*, *Camacho*, and *Mejia*, appellant did not introduce any additional evidence about his circumstances, either at the time of his plea or when he filed his section 1473.7 motion, to show his ties to the country.

There are also crucial disparities between appellant's motion and declaration about an incident involving "Ciudad Juarez, Mexico." Appellant's motion stated that "believing he was eligible for legal status, [he] applied for his legal residence card, left to [sic] Ciudad Juarez, Mexico and was denied legal residency. [¶] [Appellant] promptly retained [Mr. Longoria] to attempt to vacate this conviction and withdraw his plea on this case." The motion asserted there was evidence of prejudicial error from his plea based on "a denial notice from the American consulate from Ciudad Juarez, Mexico stating he was denied his legal permanent residence due to the instant conviction." Appellant did not submit any evidence to support or explain these claims and his declaration is silent about "Ciudad Juarez."

Appellant's motion asserted he met his burden to establish prejudicial error because "*as a permanent legal resident* he is now subject to deportation and denial of naturalization." (Italics added.) In his supporting declaration, however, appellant stated he was "attempting" to become a "Legal Permanent Resident."

Appellant's motion for relief is also undermined by assertions that he did not understand the immigration consequences of his plea "to a charge *of possession of an assault weapon*, which was immediate deportability under federal immigration law" (italics added), and this constituted evidence of prejudicial error because appellant was subject to deportation for his conviction of "purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying … any weapon, part, or accessory which is a firearm or destructive device." While appellant admitted the firearm allegation attached to the robbery charge, he was never charged with and did not plead guilty to an offense involving an assault weapon or purchasing or selling a firearm or destructive device.

The record also refutes appellant's claim of prejudicial error based on his assertion that immigration consequences were the most important issue when he entered his plea. There are no references in the public defender's file that appellant said anything about his immigration status or that he was concerned about the impact of his plea on his status. Instead, there are notes entered by the public defender, after two separate meetings prior to the plea, that appellant was interested in a "local lid w/ dismissal of s.a.," referring to the special allegation of the firearm enhancement. Appellant's statements about his desire for a "local lid" are corroborated by his section 1473.7 declaration, that his attorney told him when he entered his plea that "the conviction would be a felony but that I was not going to be put in jail for additional time." Appellant received the sentence that he wanted since the court placed him on probation on condition of serving 365 days in local custody. Thus, the only evidence in the record about appellant's concerns at the time of his plea are his comments to the public defender on two occasions prior to the

plea that he wanted a "local lid," whereas there is nothing in the record to corroborate his claim about the importance of possible immigration consequences at the time of his plea.

Finally, appellant's motion asserted Mr. Sheltzer negotiated the plea agreement and failed to advise him about the immigration consequences of the plea. At the evidentiary hearing on the motion, however, now-Judge Sheltzer testified he had no independent memory of appellant's case, he did not negotiate the plea agreement and only appeared at the plea hearing, and the public defender's file showed that a different attorney performed the initial intake for appellant, another attorney represented him at the preliminary hearing, and Deputy Public Defender Robinson conducted the negotiations that resulted in the plea offer.

The identities of the public defenders who represented appellant in 1992 are relevant to the credibility and corroboration problems in this case. Appellant filed the 1992 probation report in support of his section 1473.7 motion because of the statement in that report that appellant "has no immigration documentation." Appellant relied on this statement as evidence that his attorney was aware of his immigration status but failed to advise him about the consequences resulting from his plea. At the evidentiary hearing, however, Judge Sheltzer testified he did not negotiate the plea agreement and Mr. Robinson negotiated the plea. The record also showed that Deputy Public Defender Stanley appeared at the sentencing hearing.

As discussed in issue I, *ante*, the superior court clearly considered its original ruling that denied appellant's motion as an interim order and agreed to reconsider the matter when it still had jurisdiction, based on appellant's allegations about factual and legal errors in its ruling, and that he would produce additional evidence to resolve the disputed issues raised by section 1473.7 motion. After Judge Sheltzer's hearing testimony, appellant learned the prior assertions in the section 1473.7 motion and supporting declarations were incorrect and that other attorneys interviewed appellant, negotiated the plea agreement, and appeared with him at the sentencing hearing.

Nevertheless, appellant did not move to call either Mr. Robinson, who negotiated the plea, or Ms. Stanley, who appeared at the sentencing hearing and presumably received the probation report, and who might have clarified whether they addressed immigration consequences with him. The record suggests the court might have been receptive to granting a short continuance to call the attorneys who actually were involved in the plea negotiations since it already continued the matter for the evidentiary hearing.

A section 1473.7 motion will not always be granted "merely because the [moving party] claims to have misunderstood the consequences of a plea." (*People v. Alatorre, supra,* 70 Cal.App.5th at p. 770.) "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*Lee v. United States, supra*, 137 S.Ct. at p. 1967.)

The California Supreme Court has adopted an independent review standard for section 1473.7 motions. (*Vivar, supra*, 11 Cal.5th at pp. 524–525.) "In section 1473.7 proceedings, appellate courts should … give particular deference to factual findings based on the trial court's personal observations of witnesses. [Citation.] Where, as here, the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id.* at pp. 527–528, fn. omitted.)

Given the numerous inconsistencies in appellant's motion and declaration when compared to the entire record, we are compelled to find, based on our independent review, appellant's assertions about prejudicial error in his supporting declaration are not corroborated, but instead are undermined and refuted by the record of his conviction, and

that appellant advised the public defender's office that his primary concern was obtaining a plea agreement that carried a "local lid," which was exactly the result of the plea agreement in this case.

## **DISPOSITION**

The People's motion to dismiss this appeal is denied.

The court's order of December 9, 2019, denying appellant's section 1473.7 motion to vacate, is affirmed.